and so just for the record and we have I believe we have a supervisor here for the law students and is that James Sohn all right so your presence and your certified law students so we welcome that and also this is a pro bono case so so I don't forget when the case is concluded we do thank lawyers and and law students and clinics for doing pro bono work we appreciate all of you being here but it is helpful for the court when we ask people on the pro bono program to handle it and we realize that it's an experience for the students but it's also a service to the court so thank you in advance for that now I note on here I have two law students Elizabeth Spaeth and Katherine Kreitzberg and it appears that Elizabeth Spaeth will be arguing first and you're taking seven minutes is that correct yes your honor and I'll be speaking on the merits of Mr. Guardado's constitutional claims for those seven minutes okay sometimes we get a little off point so when you say on the merits what do you mean on his first and 14th amendment claims okay and then Katherine Kreitzberg is speaking second for eight minutes now eight minutes is your total time so I'm told that you want to reserve four for rebuttal and you'll be handling all of the rebuttal is that correct all right so you're not going to be doing any rebuttal miss Spaeth is that correct yes your honor all right so and so I will try to the clock it is your responsibility to keep track of the time but as I said I'll try to assist you on that particular point and then miss Whelan is for the total okay so having all of that in mind we are ready to proceed is your I noticed that mr. Guardado is no longer in custody is he present here today he's not your honor okay all right go ahead and state your appearance and we're ready to proceed thank you good morning your honors and may it please the court Elizabeth Spaeth for appellant Ernest Guardado I'll be and my colleague Katherine Kreitzberg will be speaking on the issue of qualified immunity and again we would like to reserve four minutes for rebuttal Ernest Guardado's Native American faith offered him both solace and community while he was in prison then without explanation the Nevada Department of Corrections and doc took away his ability to actually practice it in 2017 the department began strictly enforcing AR 810.3 conditioning access to Native American religious ceremonies on the basis of ethnicity as the district court found and doc began intentionally discriminating against mr. Guardado on the basis of his race in contravention of his right to equal protection of the law in accordance with the district courts finding that a 10.3 is a racial classification this court should apply strict scrutiny to the policy under Johnson a standard that the district court already determined that it cannot meet under its our loop analysis in the alternative even if this court disagrees with the district court that a 10.3 classifies inmates on the basis of race it still imposes an impermissible burden on mr. Guardado's constitutional right to free exercise under Turner as a district court determined and I ask you a question please are they presently enforcing this regulation well the unconstitutional but there's nothing in the record to suggest that and doc has since changed it since that decision and yes so and doc obviously continues defending it to this day all right thank you yes I'll first turn to mr. word on his 14th amendment claim under Johnson the district court committed reversible error by failing to apply strict scrutiny to mr. cord out as constitutional cranes after finding that a 10.3 constituted an impermissible racial classification that's at er 19 the Supreme Court held in Johnson v California that constitutional challenges to racial classifications in prison trigger strict scrutiny there the court noted we have quote never applied Turner to racial classifications this court should reverse and remand for judgment in mr. Guardado's favor where the district court already held that a 10.3 cannot survive the rigorous demands of strict scrutiny and I ask you a question council on the race-based classification if he had been able to show some association with tribal living via written documentation wouldn't he have qualified well the record does not indicate that that option was available to mr. guard on it it's explicit in the language of eight ten point two yes your honor but mr. Guardado himself couldn't provide proof of tribal living so for him this test turned exclusively on his ethnicity with the ethnicity with it does the rule apply to everyone independent of the ethnicity yes this this policy applied to all those who wanted to practice Native American religion in this particular prison so it's independent of race or heritage well no your honor because by its terms a 10.3 explicitly uses ethnicity as the defining criteria but everyone would have to show these element and one person wanted to participate but have to show the same thing independent of that person's ethnicity correct well yes they would have to provide proof of their native native ethnicity or affiliation yes your honor that would okay it's enrollment in the tribe or association with tribal living right so the regulation itself that the text of the regulation doesn't draw any racial classification you're saying that it's the application to him because he's not Native American is that the argument no your honor we're arguing that by its terms this imposes a racial classification I think here it's helpful to think of two hypothetical inmates who both don't meet the criteria of a B and C and for those two earn mates which this was mr. Guardado's case the test turns exclusively on the ethnicity of the individual that's what the district court found here that's what the Nevada Supreme Court found in Keeley and that's what the Fourth Circuit found in a similar policy in Morrison that all of those policies classified inmates on the basis of their race but I would like to reiterate here your honors that even if this court disagrees that a 10.3 is a racial classification this policy still cannot pass constitutional muster under Turner under that standard a prison policy that burdens an inmate's constitutional rights must be reasonably related to legitimate penological interest under a four-factor test the alternatives available to mr. Guardado the alternatives available to NDOC any pernicious impact on prison resources and whether there exists a valid connection between this policy and then DOC's justification for it the Nevada Supreme Court condemned this exact policy under Turner and the Fourth Circuit condemned a similar policy under Turner as well and I would like to emphasize that because we are at the summary judgment stage NDOC has the burden of proving the absence of a genuine dispute of fact on these factors first NDOC cannot prove as a matter of law that there exists a valid rational connection between this policy and NDOC's main justification for it safety I'll let the words of the district court speak for themselves here at ER 14 the defendants fail to identify even one actual instance of sweat lodge destruction or inmate violence in support of a quote-unquote compelling interest second NDOC cannot prove as a matter of law that there exists an alternative means of free exercise for Mr. Guardado in Ward v. Walsh this court expressly rejected private prayer in one cell as an available alternative but when the district court you lost on the Turner factors you were obviously arguing that it should be Johnson and under Johnson they did not put on the any evidence of less restrictive of tailoring correct so why your honor while the district court found this was a racial classification it actually didn't apply Johnson to that finding and instead analyzed it under Turner but under its Arlupa analysis which Mr. Guardado prevailed under which is also a strict scrutiny analysis they found that NDOC's reasons weren't compelling or that this policy wasn't narrowly tailored third NDOC cannot prove as a matter of law that it does not have available alternatives the district court determined that NDOC did not actually consider and reject alternatives before imposing this regulation that's at ER 15 and as we note in our opening brief at pages 43 and 44 Montana and Idaho open native religious practice to all NDOC actually did as well prior to 2017 and the summary judgment record does not indicate that there were any problems associated with this prior policy opposing counsel sites no instance of a court looking at this or a similar policy and determining it to be constitutional every court we have found has concluded to the contrary thank you thank you miss babe good morning good morning your honors um Katherine Kreitzberg for appellant Ernest Guardado may it please the court this is a case where prison officials dictated who qualifies as a genuine member of a religious minority appellees banned Mr. Guardado from this case because as appellees argue in briefing prison officials decided his religion was really someone else's Mr. Guardado was banned for worship because he could not prove to the officials he was of the right ethnicity qualified immunity cannot bar damages in this case together fundamental constitutional principles and a consensus of on point authority made it so that officials should have known better than to use ancestry if we're if we're having if we're struggling with whether it violated a racial classification whether it violated whether it was treating a religion differently what out there really clearly establishes this if if if we're all struggling with it how is it supposed to be obvious to the prison officials that what they were doing was wrong well your honor as this court said in ward versus Walsh the freedom to exercise the faith that moves one's conscience is a fundamental to the First Amendment and so in this case prison officials should have known better from those basic principles and this court's admonition ward versus Walsh that government officials are not allowed to dictate beyond sincerity who is allowed to qualify as a member of a religious minority and who should be able to access worship so because Mr. Guardado's beliefs were sincerely held he should have been able to he was so he was a Wiccan for some time before right and then they're allowed to change every year is that the situation well your honor before prison Mr. Guardado always practiced indigenous faiths but when they started enforcing AR 810.3 Mr. Guardado was forced to continue to register as a Wiccan in order to access the sweat lodge but he still was not allowed to worship with other Native American practitioners and when he requested the ability to change his affiliation to Native American so he could access the sweat levers of his faith and Endock said because he could not prove ethnicity he would not be allowed to access the grounds as a Native American practitioner part of what you rely on is Keeley correct the Nevada Supreme Court's decision well your honor Keeley is illustrative of how other courts have decided the issue under the 14th amendment but so you your position what is your position as to the force of Keeley given that it's unpublished so your honor our position is that the Keeley court as I stated earlier is illustrative of how other courts have decided this under the 14th amendment free exercise and Turner and to the extent that Mr. Guardado disputed in earlier briefing that the Endock officials complied with the district court's preliminary injunction and there were still injuries after Keeley then it may be instructive but ultimately honor what we rely on is those constitutional principles mentioned earlier and also for cases that create a consensus of persuasive authority that these cases are all actually indistinguishable in the sense that they all were conditioning access to free exercise based on Native American affiliation in prison that was the fourth circuit in Morrison that was the northern or the eastern district of Virginia in Mitchell and western district of Louisiana and Combs and Brown from the northern North Dakota and these are important because they are unanimous on the constitutional issue with the Supreme Court found in Wilson versus Lane it's helpful to understand whether or not a right is clearly established they're also long established in the sense that none of these cases have been challenged since the 23 years after Morrison has come down so you're claiming even though your client is no longer in custody is that correct yes your honor so it's not moot though however no your honor because he's asking for damages under section 1983 for what if he gets one dollar of damages then he gets attorney's fees is that what we're talking about or that is my understanding your honor so I see I'm out of time we ask that this court reverse the lower court's decision on the constitutional claims and remand for entry of judgment in our client's favor but in the alternative your honors we ask for reversal in the merits and remands that the district court can decide qualified immunity in the first instance thank you thank you Miss Gritzberg yes good morning good morning Jessica Whalen here on behalf of respondent Nevada Department of Corrections and may it please the court typically when I argue for a respondent I start out stating something like this is a simple case the district court got it right and here's why and while the district court did get it right here this is anything but a simple case my friends on the other side would like it to be if a prison policy implicates race then strict scrutiny applies but that's not what Johnson versus California says rather Johnson instructs that all racial classifications imposed by the government must be analyzed under strict scrutiny well I agree with you that it's not quite as simple that it's just straight race because technically there can be people that if they show they live on the reservation that they could still be entitled to worship right but they have to so there's nothing exactly like this but on the other hand it this regulation is different than any of the other religions that that they have to show some sort of membership the others they can just say hey I believe that right it is different Judge Callahan and the reason being is because of the unique heritage of Native Americans and the unique history that Native Americans have had in this country and so what NDOC has done is instead of imposing its own classification it defers to both federal law and the Nevada Indian Commission the NIC which have laid out what has to what has to be in place for a person to qualify as Native American and and one of those bases is ethnicity right if you are if you can show Native American lineage then you are granted certain rights under federal law and if you are a prisoner in NDOC the others however as Judge Wynn you you pointed out are credible association with a tribe or tribal living and so that is not an expressly ethnic it's not an express ethnic classification unless the tribes themselves have those ethnic requirements and so it's not NDOC imposing a classification it's NDOC deferring to a tribe as to who is permitted to practice that religion but none of the other religions have to show anything right just you just have to say I that's what I believe right well respectfully it has to be a sincere religious belief well but even the courts aren't if you say it's sincere judges have been criticized like say for example since he was a Wiccan for quite a few years and then he decides he wants to go to the sweat lodge and all of that if he says this is what I believe you can't really question that as a judge right that's correct courts courts really have been pretty skeptical of that kind of questioning yes the US Supreme Court has admonished courts in the past for challenging sincere religious beliefs beyond very obvious evidence so are you just are you trying to obviously the district court had an that I don't but are you going to enforce this if you went on qualified immunity here so this what happened in the district court is the district court granted mr. Gordado's summary judgment motion on the real loop action specific to him and doc has not appealed that and while this isn't really something I can rely on because it's not the record having spoken to my client they are in the process of amending a r8 10.3 to comply with the real loop a decision and once that is finalized it's very possible that that could moot the remaining claims of mr. Gordado but again that's not finalized yet so well I guess in terms of I'm just trying to think what this court has to do let's just say hypothetically and it's only hypothetically because we have not conferenced on this let's just say that we think that there was some sort of constitutional violation maybe it wasn't race maybe it was based on religion that you put restrictions on this religion that you didn't that he was treated differently because it was that particular religion but hypothetically let's say we found that it wasn't clearly established do we have to publish on this and say what the violation was so that you don't keep violating or what if I think it was race and someone else thinks it was religion or whatever but we all agree it wasn't clearly established what what but we all agree you shouldn't keep doing it how do we accomplish that do we have to do a published opinion I say you violated some constitutional rights but it wasn't clearly established I don't know that you have to do a published opinion you certainly could to provide clarity for future government actors because and doc wants to do things correctly moving forward and it would advise other states in the ninth as well but I think the best thing to do probably is what this court did in the Shakur case which is remand for further consideration if it thinks that the analysis isn't completely clear so I think the court has a few options you can affirm if you believe that you know there was no violation and the district courts analysis is if you think it's not clear and then if you think Johnson applies I think you clearly need to remand because there was no consideration if you didn't defend it you didn't put anything on that it was narrowly tailored you didn't correct not and we we argued strictly that's that Turner applied let's assume that we agree with you that it's really the Turner analysis I'm really confused about the penological interest here because there is a proffer by and doc of a crime deterrence goal and associating that with the possession of eagle feathers can you clarify for me what the concern is about the possession of the feathers sure so there are I think three interests that and doc has argued and this would apply to me I think the compelling interest or the lesser Turner legitimate penological interest and they all sort of stem from the eagle feather possession under federal law you have to obtain a certificate from the Bureau of Indian Affairs to be able to possess eagle feathers or parts now eagle feathers can be used in and doc sweat lodge ceremonies communal ceremonies and if non-natives who are not entitled to possession of eagle parts are permitted to be at these ceremonies there's an increased likelihood that and doc could be subject to liability under federal law couldn't somebody couldn't a non-native American qualify under one of the provisions of the regulations and then be present I don't believe for purposes of the and I can't remember the name of the federal act but the federal act that prohibits any non-native from obtaining eagle feathers I believe that there is a lineage requirement under federal law there's not a lineage requirement to have access to the part to participate as long as you show tribal affiliation judge concept why would the regulation and be effective in terms of this preventing violation of the law concerning possession of eagle feathers I do see the dilemma so if there was someone who was accepted into a tribe but didn't have the lineage then they would not be able to obtain the eagle feathers as well that I mean that's that's a complication of this case certainly and something that I had not thought about until today I think that's why you're proper of penological interest becomes very muddled because I thought the way that the case was briefed and argued that it had to do with some sort of safety concern a crime deterrence and so I'm like what what what is the concern here you know knowing that it is against the law to possess it if you're not entitled to have it that that's a totally separate issue so today I'm hearing that it really is a concern for exposure of and doctor some sort of liability which is very different than the way the issue was presented below and in the briefing here as well see I didn't get that point well I do want to go on to the second to see concerns compelling interest that I think flow from the possession of eagle feathers and one of those is the safety or security interest because what are you going to stab people with an eagle feather or what I mean I didn't see that it didn't seem like the government did a very good job of showing how all of this would be really a problem for prison wreck you know for keeping control in the prisons well I think the court need look no further than the Maui decision where an in a native inmate brought a lawsuit claiming that the allowing of non-native this is this is before the regulation was amended to restrict access to sweat lodge ceremonies to only native inmates are people who can show affiliation and in Maui and native prisoners sued and doc because and doc had allowed protective custody inmates most of whom were not native to desecrate the sacred sweat lodge grounds and so and I sort of stuck in between Iraq in a hard place where if it allows non-native inmates it can be subject to claims of desecration and potential security and safety interest violence from other inmates whereas if it doesn't then it's subject to potential federal liability and claims of the type that Mr. Gordado is bringing given that the defense that was presented in Maui that we all were permitted to attend and that was defended by the Nevada Bureau of Prisons correct correct why wouldn't in terms of why wouldn't that reflect then that this was a well established principle based on what the what the what the what the defendant did there well I think it was the court in I think it was the court in Maui that said it's actually not clear under law under the law whether this is a clearly established right or not but that was but the advocate the Nevada advocated for that position didn't it it did and I think that just shows the range of deference that should be permitted to prison officials so prison officials were entitled to have a policy where inmates other inmates could attend non-native and they're also entitled if they then determined that actually this is going to cause us administrative and security problems to then change that policy so there's wide discretion given to prison officials to deal with these sort of complicated issues under Turner I do want to turn unless there's other questions I want to turn to qualified immunity because I think that is an alternate grounds that this court can affirm on and qualified immunity asks first whether there was a constitutional violation which we submit there wasn't but if the court finds that there was it has to also find that the right was clearly established and the burden of proving whether a right was clearly established falls on the non-governmental party here Mr. Gordado Mr. Gordado cites to no circuit case law to show the right of non-natives to practice native religion was clearly established at the time of the alleged violation instead he cites to an unpublished Nevada Supreme Court decision Killey from 2019 and the unpublished district of Nevada decision in Maui So Killey as I mentioned it's a 2019 case it came out after the allegedly unconstitutional conduct Mr. Gordado's complaint was filed in 2018 and alleged unconstitutional conduct in 2017 and as I stated Maui actually says that the state of the law regarding the forced exclusion of non-Indian persons from Indian religious ceremonies is not entirely clear My friend on the other side notes that Mr. Gordado relies on constitutional principles which isn't enough the Supreme Court's been very clear on that if you could simply rely on the First Amendment to say this right was clearly established then qualified immunity would be null and void The only persuasive authority that's cited is one out of circuit case and three district court decisions from out of circuit and that's simply not enough to put defendants on notice that they should be afforded qualified immunity The other thing I want to note is that with respect to the alternatives that Mr. Gordado had my friend on the other side pointed out the fact that he claimed Wiccan religion so that he could access the sweat lodge but the regulations have also been amended to allow a solitary practitioner to access the sweat lodge which could be a viable alternative to Mr. Gordado here Judge Callahan as you noted Mr. Gordado is no longer in custody so his injunctive relief here that he is claiming is moot it's only the claim for damages under the Constitution that survives and I would just note that there would be no prejudice in this court remanding for further consideration if it finds that the record is not sufficiently developed on either the Turner factors or under the Johnson standard If there are no further questions I'll cede the remainder of my time Could you just go back one moment please Ms. Whalen to the colloquy we had about the Bureau of Prisons position and when it defended the prior version of the regulation In the context of qualified immunity when the very party has addressed it and it was an equal protection issue as well as a First Amendment issue but allowing all to go out was defended but now you're saying that's not clearly established as to this party even though that party advocated for that position Yes I guess what I would say is in Turner as I mentioned there's the wide discretion of the department and as Turner stated that subjecting the day-to-day judgments of prison officials to inflexible strict scrutiny analysis it would hamper its ability to anticipate security concerns And so the fact that I think the fact that Maui was brought at all may be raised in prison officials minds this is an issue we need to switch up what we're doing and so there's no case that says prison officials can't amend their regulations can't amend their policies to be flexible in addressing these concerns Thank you Alright thank you for your argument May it please the court Your honors I'd just like to address three different concerns that my friend on the other side raised during argument for the state The first is that whether the policy is based on federal definitions of Indian identity My friend on the other side says that the AR810.3 mimics federal statutes and that's not true in fact in fact in briefing opposing counsel cited only the Grave Repatriation Act and the Indian Education Act neither of which map onto the standards for Native American worship that are expressed in AR810.3 Especially that the requirement that there needs to be ethnicity to show access to Native worship The second is two questions under whether the policy actually advances the state of interest of NDOC So first I'd like to address the concern surrounding eagle feathers Opposing counsel stated that all that needs to be shown in order to access eagle feathers is Native lineage and that's not true Under the Bald Eagle Protection Act somebody has to be able to show the BIA that they have tribal enrollment in order to access the eagle feathers And that shows that the AR810.3 is actually under inclusive If it were true that the policy were designed to prevent non-tribal members from possessing eagle feathers Then the policy would not allow those to access Native worship who can only meet B, C, or D And especially D because none of them require proof of tribal enrollment The second security risk that's highlighted by opposing counsel Again I'd like to note that under Turner itself officials should have been put on notice That they had to offer more than merely speculative evidence which the district found to be nothing more than impermissible hearsay As to why there may be an issue for violence that occurs in the prison So Turner itself says that that's not enough And finally your honors, ultimately this is a right to worship in line with sincerely held religious belief Absent a justified and proven carceral interest Opposing counsel has been able to show nothing that satisfies the Turner requirements And I'd like to note that there are four cases outside of Kile and outside of Maui That had analyzed these policies conditioning access to Native worship on ethnicity or tribal affiliation And each of them found that this constituted an impermissible racial classification And that safety and security interests were not able to meet the requirements of even Turner deference Again that is another circuit court That's the fourth circuit as early as 2001 in Morrison versus Garrity And that's three different district courts in different jurisdictions across this country that go all the way back to 1997 So would that those other circuit and district courts make it clearly established? Yes your honor in line with the constitutional principles that you have the right to worship in prison in line with your sincerely held religious beliefs So what's your best Supreme Court case and what's your best Ninth Circuit case? Your honor that would be Thomas versus Review Board which is quoted in Ward versus Walsh And is also quoted in each of the cases that have decided a similar policy And which states that you have the ability in prison to practice in line with your sincerely held religious beliefs The religion of your choosing Well the Supreme Court has cautioned the Ninth Circuit many times not to define these too broadly That there is sort of a fact specific type of thing and this does have a lot of unique facts So the fact that we're talking about all of this and it's a little bit confusing I'm wondering how a correctional officer would know this Well your honor based on those principles and the four cases that are unanimous Which I think is important because there is nothing out there No precedent that should have confused any officer whether or not these rights actually existed But additionally your honor this was the position that was held by the Nevada Department of Corrections As early as 2009 in the Maui case which at least goes to show that as early as 2009 NDOC which cited each of those cases that we offer as part of the persuasive authority Believed that this was not constitutional So for that reason your honors we ask at the very least you rule on the constitutional merits Thank you for your argument both sides Thank you Mr. Price can you approach the bench for a second please I need to take a short recess my computer is going a little nuts And I need you to send back my law clerk that's sitting on the front left David Fox back here Okay While the next case is being We're going to call the next case United States of America versus Isbon Copas 22-10328 The court's going to just take a short recess I'm having a little computer issue and we'll be right back out Thank you
judges: CALLAHAN, NGUYEN, Kronstadt